# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TALIAH J. HASAN,

                Plaintiff,

v.

                Case No. 17-CV-1433-JPS

CREE, INC.,

                Defendant.

## 1.    INTRODUCTION

This litigation arises from the temporary employment of the plaintiff, Taliah J. Hasan ("Hasan"), with the defendant, Cree, Inc. ("Cree"), in 2015. Hasan contends that Cree terminated her temporary assignment in violation of the discrimination and retaliation provisions of Title VII and in violation of Wisconsin common law. Cree moved for summary judgment, and that motion is now fully briefed and ripe for adjudication. (Docket #21). For the reasons explained below, Cree's motion will be granted and this case will be dismissed.

## 2.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "Material facts" are those facts which "might affect the outcome of the suit," and "summary judgment will not lie if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to demonstrate a genuine dispute about a material fact, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3.  **RELEVANT FACTS**

Consistent with the standard of review, the following facts are taken from the evidence when viewed in a light most favorable to Hasan.

Cree is a worldwide manufacturer of lighting-class LEDs, lighting products, and products for power and radio frequency applications. Its many national and international facilities include a manufacturing plant in Racine, Wisconsin. Cree has used the services of various staffing agencies to help fill temporary positions when necessary. In 2015 at the Racine facility, this included the staffing agency Goodwill TalentBridge ("TalentBridge"). Upon receiving a request from Cree for an employee placement, TalentBridge would identify a suitable candidate and offer that person an assignment at Cree.

Hasan applied for, was offered, and accepted employment with TalentBridge in August 2015. In the late summer of that year, Cree sought assistance from TalentBridge to temporarily assist its human resources department with administrative tasks. TalentBridge identified Hasan as a suitable candidate to fill the assignment. Cree's recruiting specialist, Nina Grimsic ("Grimsic"), reviewed Hasan's credentials, interviewed her, and requested that TalentBridge extend an offer. Hasan accepted and began her temporary assignment at Cree on September 1, 2015. Hasan received direction at Cree from Renee Solano ("Solano"), a human resources manager.

### 3.1 Hasan's Violations of the Attendance Rules

At the start of her employment with TalentBridge, Hasan signed an acknowledgement form stating that she agreed to comply with TalentBridge's policies and procedures as laid out in the company's handbook, which included an expectation that employees be at their work stations before the start of the shift and to be at work when scheduled. She was informed in the handbook that excessive tardiness and absenteeism would result in corrective action up to and including termination. Hasan was instructed by Elizabeth Villalobos, TalentBridge's supervisor of talent acquisition, that if Hasan was going to be late to or absent from work, she should call TalentBridge's attendance phone line. In addition, Cree required Hasan to complete weekly time sheets and submit them to Kiah Ballard-Miles ("Ballard-Miles"), a human resources associate at Cree, who then provided the time sheets to TalentBridge. On or around October 22, 2015, Cree modified its attendance policy as to certain employees, including Hasan, such that employment would be terminated upon the sixth

occurrence of a late arrival to work, early departure from work, or missed day without supervisor approval.[1]

Hasan's work schedule at Cree was Monday through Friday, with a report time of no later than 9:30 a.m. each day. Her attendance during her tenure at Cree was problematic. On September 28, 2015, she called in to report that she would be absent due to car trouble. The next day, she called in to report that she would miss nearly half of the work day while waiting to have her car repaired. On October 19, 2015, Hasan was thirty minutes late for her assigned shift. On that day, Grimsic emailed Moran and Villalobos to inform them that Hasan was tardy and that Grimsic planned to speak with Hasan regarding her attendance. That same day, Moran also counseled Hasan about Cree's attendance policy and advised Hasan that she had accumulated two violations.[2] On October 21, 2015, just two days

---

[1] The parties disagree as to whether the modification also relieved Hasan of her obligation to notify TalentBridge, in addition to Ballard-Miles, if she was going to be tardy to or absent from work. *See, e.g.,* (Docket #34 at 5). This dispute is not material to the resolution of Hasan's claims. Her termination was premised on missed days at, and late arrivals to, her job at Cree, not on having failed to notify the appropriate person of her tardiness and absenteeism. Further, there is no evidence that notifying someone at either TalentBridge or Cree of an unapproved late arrival to work would have excused the tardiness.

[2] Hasan claims not to recall being counseled at that time, but TalentBridge's records confirm the counseling took place. *See* (Docket #34 at 18). Hasan also generally claims not to recall ever being disciplined for attendance issues. *Id.* However, she does not dispute that she was indeed absent or tardy on the occasions Cree says she was. Hasan also implies that she had permission from Solano to be late to work, but the evidence she cites does not support that proposition. Specifically, Solano testified in her deposition that Hasan sometimes arrived early to work when the department was busy with a big project, and that this was permissible. (Docket #32-4 at 11). There is no evidence to suggest that because Hasan was permitted to arrive early on some days, she was excused from arriving late on other days.

later, Hasan was late for a mandatory teambuilding meeting. Hasan was late again for shifts on October 27, November 30, and December 1, 2015.

On December 14, 2015, Hasan was late a final time. She sent a text message to Ballard-Miles at 8:30 a.m. explaining that she would be late.[3] At 9:44 a.m. that day, Grimsic emailed TalentBridge to inquire whether Hasan had called in to notify TalentBridge that she would be late or absent. Villalobos responded by phone, saying they had not received a call-in from Hasan. An hour and half passed with Hasan still not reporting for work. Grimsic and Solano conferred and decided to terminate Hasan's temporary assignment due to Hasan's violations of the attendance rules. To that end, Grimsic sent an email to Villalobos requesting that TalentBridge end Hasan's assignment. When Hasan finally arrived to work, security personnel asked for her badge and notified Solano, who then met Hasan in the lobby with Hasan's personal belongings. Solano told Hasan that Cree had terminated her assignment because she was a no-call, no-show.[4]

---

[3]Cree believes Hasan sent the text at 9:30 a.m. but admits for the purposes of summary judgment that Hasan claims to have sent the text message at 9:30 a.m. *eastern standard time*, which is 8:30 a.m. in the time zone where Cree is located. (Docket #34 at 35). In any event, there is no evidence to suggest that texting Ballard-Miles an hour before she was supposed to start her shift excused her tardy arrival.

[4]Hasan claims that Cree forgave some of her attendance violations but does not present evidence confirming how many such violations were excused. *See* (Docket #35 at 4). Solano testified that Cree forgave violations that Hasan had accumulated prior to Cree establishing Hasan's 9:30 a.m. start time in September 2015. (Docket #32-4 at 22). Regardless of any forgiven violations, Hasan agrees that she was late or absent six times beginning in October 2015. Further, even if Hasan had technically not accumulated enough attendance violations to warrant termination under Cree's policy, Hasan has not presented evidence to suggest that those at Cree who decided to terminate her thought or knew that she was still within the number of violations allowed before termination; it is their motive for termination that is at issue.

### 3.2 The Documentation Project

Several other events that took place during Hasan's tenure at Cree are relevant to this lawsuit. The first is a disagreement between Hasan and her employer regarding a task she was assigned in mid-October 2015. Hasan was instructed to perform an administrative task of correcting certain personnel files that were missing pages. The files were associated with certain employees who Cree had retained from Ruud Lighting ("Ruud") when Cree bought Ruud in 2011. Those individuals had signed a confidentiality agreement upon their hire with Cree, and upon receiving the executed agreements, Cree's then-senior recruiter Lisa Fiorita ("Fiorita") had placed the signed signature pages, but not the preceding pages of the agreement, into the employees' personnel files.

Cree later learned of this problem, and to correct it, Solano instructed Hasan to make a copy of the first four pages of the agreement, attach them to the signature page for each employee who had received and signed the agreement, and place the entire agreement in the employee's personnel file. Cree had not updated or changed the first four pages of the agreement since 2011, and accordingly the pages of the agreement provided to Hasan for this project were identical to those provided to the employees who signed the agreement in 2011.[5]

Hasan believes the agreement documentation project was "illegal" because she was being asked to add contract terms to employees' files

---

[5]Hasan objects to Cree's proposed fact that the first four pages of the agreement were unchanged between 2011 and 2015 but offers no relevant evidence or argument to create a genuine dispute. *See* (Docket #34 at 12).

without their knowledge.[6] She says that she expressed her concern about this illegality to Grimsic, but apparently not in writing.[7] Although Hasan communicated by email with Solano several times regarding the documentation project, she never objected to the assignment in writing or stated in writing any belief that the assignment was somehow improper, unethical, or illegal. Hasan did not file a formal complaint with Cree regarding her concern. She completed the project in late November or early December 2015.

### 3.3 Derogatory Comments about Muslims

During the week of December 7, 2015, Cree's Racine human resources department participated in an on-site training and team-building program. On December 8, in conjunction with the program, the human resources team, including Hasan, Solano, and recruiting specialist Lora Joyce ("Joyce"), had lunch together.

---

[6] Hasan now maintains that this belief is based in part on her understanding from her co-workers that Fiorita had been fired because she handed out the signature pages, but not the whole contract, to the Ruud employees. (Docket #34 at 13–15). At her deposition, she was asked about this belief, and she responded that she heard Fiorita was fired for not doing her job, but she "can't speculate" as to whether one of Fiorita's mistakes was simply failing to include three term pages of the contract in employees' files (as opposed to failing to show the employees the term pages). (Docket #32-1 at 50). Cree counters that Hasan had no way of knowing why Fiorita was fired. (Docket #34 at 13–15). Hasan's belief that Fiorita did not show the employees the term pages is premised on hearsay evidence, and she has no personal knowledge about whether the employees saw the three term pages of the contracts they signed.

[7] Hasan claims that she also told Villalobos about her concern during a meeting after her termination. (Docket #34 at 16). Cree objects to the evidence Hasan cites in support of this proposition, but, even taking Hasan's evidence into account, the dispute is not material. Alerting Villalobos to a concern about a project only after being terminated cannot have been the cause of Hasan's termination.

During the lunch, Solano asked Joyce if she intended to vote for Donald Trump in the upcoming election, and Joyce responded affirmatively. In response, Solano said, "But [Donald Trump] wants to send all Hispanics back to Mexico." (Docket #34 at 26). Joyce retorted with something like, "Good, that's where they belong." *Id*. Solano responded by reminding Joyce that her husband is Hispanic, and Joyce responded that she knew. The discussion concluded with Solano telling Joyce that she could not believe Joyce would vote for someone like Donald Trump. Although Hasan was present during this conversation, she said nothing.

Later on December 8, Solano approached the human resources area where Hasan, Grimsic, Joyce, and benefits analyst Lauren Nolan ("Nolan") were working and asked them for feedback regarding an applicant for a vacant management position who was Muslim. In response, Joyce stated that she would not feel comfortable working with a Muslim because she believed Muslims are violent people. Nolan said she would also not feel comfortable working with a Muslim, stating that "they do not belong here." *Id.* at 28. Hasan responded to the two women, expressing her displeasure at the women's remarks because she is a Muslim. Joyce said she had no idea Hasan was Muslim, but that even still, she would not feel comfortable working with the Muslim applicant. Nolan agreed. Hasan then left the conversation and went back to her desk.

Following that episode, Solano informed Grimsic that she had located a potential candidate for the vacant position. She asked whether she could move forward with the application process in light of certain national origin hiring restrictions to which Cree was subject because of its contract work with the United States Department of Defense ("USDOD"). Grimsic contacted Cree's recruiting manager, Sean Brody ("Brody"), to obtain more

information regarding Cree's policy for hiring foreign nationals. Brody informed Grimsic that the limitations only applied to positions that included work on military or military-related contracts for the USDOD. Because the applicant Grimsic had identified was not seeking work related to military contracts, Cree continued to process the application.

On December 11, 2015, Hasan initiated a meeting with Solano to discuss a matter unrelated to the December 8 discriminatory remarks. The women discussed Hasan's question, after which Solano broached the subject of the racially-charged remarks described above. Solano said that if Hasan was offended by those comments, Hasan should write a statement saying as much.[8] Hasan declined, stating that she should not have to write a statement because Solano heard the remarks. Solano explained that a statement from Hasan would be taken more seriously than only a report from Solano, because Solano believed that some people at Cree thought Solano had a vendetta against Joyce. Hasan did not provide a written statement or complaint to either TalentBridge or Cree regarding the December 8 comments.

4. ANALYSIS

On these facts, Hasan brings three claims. First, Hasan claims that Cree discriminated against her in violation of Title VII by terminating her assignment on the basis of her religion. Second, Hasan claims that Cree retaliated against her in violation of Title VII for complaining about the mistreatment she experienced on the basis of her religion. Third, Hasan

---

[8]Hasan claims that she understood Solano's instruction to refer to Joyce, who made offensive comments about Hispanic and Muslim people, but not any other employee who made offensive remarks. (Docket #34 at 31). Whether this is true is not material.

claims that Cree wrongfully terminated her assignment, in violation of Wisconsin common law, for voicing displeasure about performing the documentation project that she believed constituted forgery. The Court will address each claim in turn.

### 4.1 Count I: Religious Discrimination

Hasan first claims that Cree terminated her because of her religion and that Cree's proffered reason for her termination is pretext for discrimination. Cree contends that it ended Hasan's assignment because of Hasan's repeated attendance violations. Hasan seeks summary judgment on the grounds that Hasan fails to establish a *prima facie* case of discrimination under *McDonnell Douglas* and, in any event, cannot show that Cree's reasons for firing her constitute pretext.

Title VII prohibits employers from discriminating against employees on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see also Lewis v. City of Chicago*, 496 F.3d 645, 650 (7th Cir. 2007). In the Seventh Circuit, courts addressing Title VII claims consider all relevant evidence "as a whole," without separating "direct" and "indirect" evidence. *Ortiz v. Werner Enters.*, 834 F.3d 760, 763 (2016). The court asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765.

The Seventh Circuit's decision in *Ortiz* did not, however, alter the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ortiz*, 834 F.3d at 766. As a result, courts addressing discrimination claims are to conduct the *McDonnell Douglas* analysis if the parties present arguments "in those terms," but also assess the plaintiff's evidence "cumulatively" to determine "whether it permits a reasonable

factfinder" to conclude that the challenged employment action was attributable to a proscribed factor. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

A *prima facie* case of discrimination under *McDonnell Douglas* requires a plaintiff to show that: (1) she belongs to a protected class; (2) at the time of her termination, she was performing reasonably in accordance with the defendant's legitimate expectations; (3) despite her reasonable performance, she was subjected to an adverse employment action; and (4) similarly situated employees outside of her protected class received more favorable treatment. *See Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 834 F.3d at 765. If the plaintiff states a *prima facie* case, then the defendant "must articulate a legitimate, nondiscriminatory reason" for the termination, at which point the burden reverts to the plaintiff to show that the defendant's explanation is pretextual. *Id.* An inquiry into pretext requires evaluating "the honesty of the employer's explanation, rather than its validity or reasonableness." *O'Leary v. v. Accretive Health, Inc.*, 657 F.3d 625, 636–37 (7th Cir. 2007).

Hasan has failed to present evidence sufficient to satisfy at least two of the *McDonnell Douglas* prongs—that she met Cree's legitimate expectations and that Cree treated similarly situated employees more favorably.[9] Cree had a legitimate expectation that its employees arrive to

---

[9]The parties also dispute whether Hasan is a member of a protected class. Cree argues that Hasan is not actually a practicing Muslim and that her only connection to the faith is through her father, with whom she has not lived since she was very young. (Docket #22 at 14–16). Hasan insists she is Muslim and submits as evidence that she does not eat pork, celebrates Allah, kept her Muslim last name, owns a Quran and prayer blanket, and uses Muslim greetings with her father. (Docket #28 at 5). The Court need not opine on the sincerity of Hasan's

their shifts in a timely fashion and otherwise comply with Cree's attendance rules. Hasan does not credibly dispute this. Instead, Hasan argues that because some of her violations had been forgiven, she had not reached the threshold number of violations to warrant termination at the time she was fired. But even accounting for some forgiven violations, the undisputed evidence demonstrates that Hasan was tardy or absent six times when she was terminated. Her repeated violation of Cree's attendance rules demonstrates that she was not meeting Cree's legitimate expectations. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001) (plaintiff did not meet employer's legitimate expectations where, among other things, plaintiff violated employer's work attendance guidelines on no fewer than eight occasions).

Hasan also has not presented evidence that similarly situated employees outside her protected class were treated more favorably than she was. She mentions not a single other comparator. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014) (To survive summary judgement under *McDonnell Douglas*, the plaintiff must show that "at least one similarly situated employee, outside of their protected class, was treated more favorably than they were."). Hasan's only attempt to satisfy this prong of the *McDonnell Douglas* test is to argue that Cree has not identified any other employee who it terminated in the lobby of the building, where Hasan learned of her termination. This says nothing about whether Cree treated non-Muslim employees more favorably than it treated Hasan. There is no evidence in the record that Cree continued the assignments of any worker,

---

purported religiosity to resolve the pending motion. Hasan's claims fail for several other reasons, as described herein.

regardless of religion, who repeatedly ignored attendance expectations. To the contrary, Cree presented evidence that it terminated the employment of 79 temporary workers for attendance violations in 2015. (Docket #34 at 41).

Because Hasan has failed to show that she was meeting Cree's legitimate expectations and that Cree treated a similarly-situated employee more favorably, she has failed to establish her *prima facie* case under *McDonnell Douglas. See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002). Accordingly, the Court need not proceed to the pretext inquiry. *Id.* at 326–27, 331. Hasan's claim is doomed from the start.

This conclusion holds under the *Ortiz* holistic approach as well. Under *Ortiz*, this Court must assess Hasan's evidence cumulatively, and ask whether it would permit a "reasonable factfinder to conclude" that her religion caused her termination. *Ortiz*, 834 F.3d at 765. Hasan's evidence raises no reasonable inference that improper motives drove Cree's actions. She does not credibly undermine Cree's stated reason for terminating her, and in fact admits that she was tardy or absent on many occasions. She points to derogatory remarks made by Joyce and Nolan about Muslims, but neither of those women were involved in the decision to terminate Hasan's employment. The only connection Hasan makes between one of the decisionmakers—Solano—and her religion is that Solano told the department she was unsure if Cree would hire a Muslim person for an open position. Other evidence suggests that this comment was based on Cree's restrictions for hiring foreign nationals for certain positions and, in any event, Hasan has presented no evidence connecting Solano's alleged bias to Hasan's termination. In other words, Hasan has presented no evidence that any of the decisionmakers involved in her termination acted upon any

religious animus, and the events surrounding her termination do not show a discriminatory reason for her firing.

### 4.2 Count II: Retaliation

Hasan next claims that Cree fired her because she engaged in protected activity by complaining about her co-workers' derogatory remarks about Muslims. In addition to baring an employer's discrimination based on race, color, religion, sex or national origin, Title VII also bars employers from retaliating against employees who engage in protected activity by exercising their Title VII rights. *See Poullard v. McDonald*, 829 F.3d 844, 855–56 (7th Cir. 2016); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53 (2006).

Because *Ortiz* applies to Title VII retaliation claims, *see Williams v. Office of Chief Judge of Cook Cnty.*, 839 F.3d 617, 626 (7th Cir. 2016), and the parties again frame their arguments in accordance with the method of proof outlined in *McDonnell Douglas*, the Court considers the evidence under that framework before focusing upon the more general inquiry of whether a reasonable jury could find that Cree terminated Hasan in retaliation for protected activity. *See David*, 846 F.3d at 224. Therefore, to establish her *prima facie* case, Hasan must demonstrate that (1) she engaged in protected activity, (2) she suffered a materially adverse employment action, (3) she was meeting her employer's legitimate expectations, and (4) she was treated less favorably than similarly-situated employees who did not engage in protected activity. *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 862 (7th Cir. 2015).

As explained above, Hasan has failed to provide evidence sufficient to show that she was meeting Cree's legitimate expectations and that other

similarly-situated employees were treated more favorably than she was. For these reasons, her retaliation claim is also doomed.

Further, it is not clear that Hasan engaged in protected activity. The evidence demonstrates that, in response to Solano's inquiry about whether Hasan found her co-workers' comments about Muslims offensive, Hasan responded affirmatively. But Hasan's conversation with Solano did not include an allegation that Hasan's co-workers had discriminated against her impermissibly. And Hasan declined to file a complaint or grievance. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (Filing an official complaint with an employer may constitute statutorily protected activity under Title VII if the complaint indicates that discrimination occurred because of the complainant's protected class). Hasan provided no case law—indeed no citations to any legal authority—to support her argument that her conversation with Solano amounted to protected activity. Absent any effort from Hasan to support this element of her claim, it fails.

Because Hasan has failed to raise a jury question as to three of the *prima facie* elements of retaliation, her claim cannot succeed. For the sake of completeness, the Court also considers the evidence holistically, pursuant to *Ortiz*, to determine if a jury could reasonably find that Cree terminated Hasan in retaliation for protected activity. For all of the reasons stated above, and for the additional reason that Hasan has not presented causation evidence connecting her complaint to her termination, *see Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014), no reasonable jury could decide in Hasan's favor.

### 4.3 Count III: Wrongful Discharge

Finally, Hasan claims that Cree terminated her employment in violation of Wisconsin common law. Under the doctrine of employment-at-will, which has been adopted in Wisconsin, an employer may discharge an at-will employee "for good cause, for no cause and even for cause morally wrong" without liability. *Tatge v. Chambers & Owen, Inc.*, 579 N.W.2d 217, 223–24 (Wis. 1998). In *Brockmeyer v. Dun & Bradstreet*, however, the Wisconsin Supreme Court adopted a "narrow" public policy exception to this rule, holding that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." 335 N.W.2d 834, 840 (Wis. 1983).

To state a claim for wrongful discharge under *Brockmeyer*, the plaintiff "must identify a constitutional, statutory, or administrative provision that clearly articulates a fundamental and well-defined public policy." *Bammert v. Don's Super Valu, Inc.*, 646 N.W.2d 365, 369 (Wis. 2002). If she identifies a public policy sufficient to trigger the exception, and further demonstrates that her termination violated that public policy, the burden shifts to the employer to show "just cause" for the termination. *Id.* The Wisconsin Supreme Court "caution[s] against interpreting the public policy exception too broadly." *Id.*

Hasan contends that her termination violated the public policy embodied in the Wisconsin statute forbidding forgery. That statute provides, in relevant part:

> (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of

> one who did not give such authority, is guilty of a Class H felony:
>
> (a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights[.]

Wis. Stat. § 943.38(1)(a) (Forgery).

Cree seeks summary judgment on this claim for several reasons. First, Cree contends that temporary workers like Hasan are not entitled to the protections of the public policy exception to Wisconsin's employment-at-will doctrine. Cree also contends that an employee can invoke the public policy exception only if she *refuses* to engage in illegal conduct at the employer's direction, and Hasan never refused a project assigned to her. The Court need not wade into these more nuanced questions of Wisconsin common law because Hasan's claim fails for two other more obvious reasons.

First, as Cree points out, Hasan has not presented sufficient evidence to demonstrate that Cree asked her to forge anything. Hasan believes that the documentation project involved forgery because she was asked to place four pages of an agreement into employees' files that contained only signature pages. But apart from Hasan's uncorroborated suspicion, there is no evidence in the record before the Court to suggest that the employees who executed the signature pages did not see and agree to the terms of the agreement included on the missing four pages. Hasan concedes, for example, that the agreements were executed years before she began her employment at Cree, and therefore she has no firsthand knowledge of the terms to which the employees agreed. She also did not reach out to any of

those employees to confirm her suspicion, either at the time or in preparation for this litigation. Her suspicion about the documentation project is not enough to survive summary judgment. *See Brockmeyer v. Dun & Bradstreet*, 325 N.W.2d 70, 73 (Wis. Ct. App. 1982), *aff'd,* 335 N.W.2d 834 (Wis. 1983) ("A wrongful discharge claim cannot be based on such speculation").

Second, Cree had just cause for terminating Hasan. As explained at length above, Hasan did not meet Cree's legitimate attendance expectations, and she was terminated for her attendance violations on a day when she arrived to work several hours late. The evidence presented to the Court on summary judgment amply demonstrates this was the reason for Hasan's termination. No evidence ties Hasan's concern about forgery to her termination.

For these reasons, Hasan's wrongful discharge claim fails.

5.   **CONCLUSION**

Hasan has not raised a triable issue as to any of her claims. Instead, on the record before the Court and under the controlling law, Cree is entitled to summary judgment in its favor on all claims. Therefore, Cree's motion for summary judgment will be granted and this case will be dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that Cree, Inc.'s motion for summary judgment (Docket #21) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of October, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge